UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| PEARISON WOODS, | Case No. 2:23-cv-01934-RFB-DJA |
| Plaintiff, | **ORDER** |
| v. | |
| AMERICAN FEDERATION OF STATE, COUNTY, AND MUNICIPAL EMPLOYEES, AFL-CIO, *et al.*, | |
| Defendants. | |

Before the Court is the Motion to Dismiss (ECF No. 11) by Defendant American Federation of State, County, and Municipal Employees ("AFCSME"), Local 4041 ("Local 4041") and Plaintiff Pearison Woods' Counter Motion to Amend (ECF No. 16). For the following reasons, the Motion to Dismiss is granted in part and Mr. Woods' Motion is denied.

I. **FACTUAL ALLEGATIONS**

The following allegations are taken from the Complaint.

Local 4041 is a local union affiliation of Defendant AFSCME, AFL-CIO ("International"). Plaintiff Pearison Woods is a Black man. In late 2018, he was recruited to work for International. Mr. Woods sought the open position of Organizing Director, for which he was qualified. However, he was offered the low-level position of Coordinator by International's Field Services department, which was headed by Mike Sukal, a white man. Mr. Woods accepted the position believing he could win promotions with hard work, success, and dedication.

On January 4, 2019, Mr. Woods began working with International as a Coordinator. He was assigned to work in Nevada and was successful. After a year, Mr. Woods inquired with his

supervisor about a promotion. His supervisor said he needed to discuss the promotion with Mr. Sukal. Mr. Sukal refused to promote Mr. Woods, stating that he preferred to promote "people who are loyal." Instead, Mr. Sukal promoted four white males.

On March 16, 2020, Mr. Woods obtained an Organizing Director position for a International affiliate based in New York. Mr. Sukal and his team at International worked to undermine Mr. Woods by refusing his requests for aid developing a campaign plan and secretly developing their own campaign plan to damage Mr. Woods' reputation. They also disseminated a false narrative that Mr. Woods was not doing his job. On November 21, 2022, Mr. Woods was hired for the position of Chief of Staff for Local 4041. He was to replace the incumbent, John Westmoreland, who was paid via a grant from International overseen by Mr. Sukal. Mr. Westmoreland is white. Mr. Sukal was upset about this development. On January 3, 2023, International placed Local 4041 under its direct control via an informal administratorship ("Administratorship") headed by Ken Allen. Mr. Allen is white.

Mr. Sukal told Local 4041's officials that if they did not agree to Mr. Allen's placement as their chief executive, the grant funds used to pay Mr. Woods' salary would be withdrawn. Mr. Allen was appointed, effectively demoting Mr. Woods. Mr. Woods began reporting to Mr. Allen and his responsibilities were limited. International launched an investigation into Mr. Woods job performance as Chief of Staff, falsely accused Mr. Woods of disloyalty and sowing divisions. Mr. Woods formally complained to the President of International, Lee Saunders, about this continuing pattern of disparate and unfair treatment by Mr. Sukal and due to his race. His formal complaint stated he had been told by other employees that his treatment was because of his race.

On June 15, 2023, International convened an internal adjudication panel regarding the Administratorship. On June 22, 2023, Local 4041 the Administratorship was made formal. Subsequently International and Local 4041 (together "Defendants") demoted, monitored, and locked-out Mr. Woods. His title and responsibilities were reassigned to E.J. Serrano, who is not Black, and is known to be loyal to Mr. Sukal. Mr. Woods began suffering extreme emotional distress and severe chest pain, which Mr. Serrano minimized. On July 20, 2023, Defendants fired Mr. Woods and falsely stated that Mr. Woods had been colluding with the state and defrauding

Local 4041 by seeking a contract.

On August 17, 2023, Mr. Woods filed a Charge of Discrimination ("Charge") with the United States Equal Employment Opportunity Commission ("EEOC") against International. That charge set forth Mr. Woods allegations of race-based discrimination and retaliation in violation of Title VII. On August 25, 2023, the EEOC issued a Determination and Notice of Rights advising Mr. Woods the EEOC would not proceed further with its investigation and that it made no determination regarding violations. This document was an official notice of dismissal and notice that Mr. Woods had 90 days to bring a suit in federal court.

## II.   PROCEDURAL HISTORY

On November 21, 2023, Mr. Woods filed the Complaint. ECF No. 1. On January 26, 2024, Local 4041 filed the instant Motion to Dismiss. ECF No. 11. The motion was fully briefed, including a request to amend the complaint by Mr. Woods. ECF Nos. 15, 20, 21, 22. Without further explanation, International joined the Motion to Dismiss. ECF No. 14. On June 5, 2024, the Honorable Maximiliano D. Couvillier, III, United States Magistrate Judge, conducted an early neutral evaluation at which a settlement was not reached. ECF No. 33. On August 2, 2023, the Court set a hearing on the instant motions. ECF No. 36. This was vacated due to the inability of the parties. ECF No. 38. The Court's Order follows.

## III.   LEGAL STANDARDS

An initial pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In ruling on a motion to dismiss, "[a]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." Faulkner v. ADT Sec. Services, Inc., 706 F.3d 1017, 1019 (9th Cir. 2013) (citations omitted).

To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but it must do more than assert "labels and conclusions" or "a formulaic recitation

of the elements of a cause of action[.]" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). In other words, a claim will not be dismissed if it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," meaning that the court can reasonably infer "that the defendant is liable for the misconduct alleged." Id. at 678 (internal quotation and citation omitted). The Ninth Circuit, in elaborating on the pleading standard described in Twombly and Iqbal, has held that for a complaint to survive dismissal, the plaintiff must allege non-conclusory facts that, together with reasonable inferences from those facts, are "plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).

**IV.  DISCUSSION**

The Court now turns to the instant motions. Defendant Local 4041 brings the instant Motion to Dismiss arguing that Mr. Woods has failed to state a claim. The Complaint brings nine claims against the Defendants: (1) Racial Discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"); (2) Retaliation; under Title VII; (3) Racial Discrimination under the Civil Rights Act of 1866 ("CRA"); (4) Retaliation under the CRA; (5) Violation of NRS 613.010; (6) Nevada Negligent Hiring, Training, Retention, and Supervision; (7) Nevada Defamation; (8) Nevada Intentional Infliction of Emotional Distress ("IIED"); and (9) Nevada Civil Conspiracy. Mr. Woods avers that he has successfully pleaded each claim but, in the alternative, requests leave to amend.

**A.  Local Rules**

As a threshold matter, the Court notes that Mr. Woods filed a 30-page motion seeking both to act as an Opposition to the instant Motion to Dismiss and a Counter Motion to Amend. The Court notes that the Local Rules proscribe over-length briefs and combined opposition-counter motions. See Local Rule 7-3 (limiting non-summary judgment opposition briefs to 24 pages); Local Rule IC 2-2 ("[S]eparate documents must be filed for a response to a motion and a countermotion . . . rather than filing a response and a countermotion in one document[.]"); see also Local Rule 15-1 (requiring parties attach a proposed amended pleading to motions seeking

leave of the court to file an amended pleading). Both Parties are reminded to assiduously follow the local rules in all future submissions. See also Local Rule IC 7-1 ("The court may strike documents that do not comply with these rules.").

### B. Dismissal of the Complaint

With that understanding, the Court now turns to merits of Local 4041's motion. For the following reasons, the motion is granted in part and denied in part.

#### i. *Claims I and II: Title VII and Administrative Exhaustion*

The Complaint's first and second claims are brought under Title VII. Local 4041 argues that Mr. Woods failed to complete the mandatory EEOC process against Local 4041 as his EEOC only named and focused on International. Mr. Woods counters that, while not named, Local 4041 was identified as involved in the relevant allegations of discrimination.

Title VII limits claims to those named in the underlying EEOC charge.[1] However, potentially relevant exceptions. First, if the respondent named in the EEOC charge is a principal or agent of the unnamed party, or if they are otherwise "substantially identical parties," the suit may proceed against the unnamed party. Sosa v. Hiraoka, 920 F.2d 1459 (9th Cir. 1990). Second, where "[b]oth the EEOC and [those named] should have anticipated that" the party in question would be named in the later lawsuit, the charge is sufficient. Chung v. Pomona Valley Comm'y Hosp., 667 F.2d 788, 792 (9th Cir. 1982); Sosa, 920 F.3d at 1459. Third, "charges can be brought against persons not named" in the underlying charge "where they were involved in the acts" giving rise to the charge. Sosa v. Hiraoka, 920 F.3d at 1459-60 (quoting Wrighten v. Metropolitan Hosp., 726 F.2d 1346, 1352 (9th Cir. 1984)). Nevertheless, "[i]ncidents of discrimination not included in an EEOC charge may not be considered by a federal court unless the new claims are 'like or reasonably related to the allegations contained in the EEOC charge.'" Green v. L.A. Cty. Superintendent of Schs., 883 F.2d 1472, 1475-76 (9th Cir. 1989) (quoting Brown v. Puget Sound Elec. Apprenticeship & Training Tr., 732 F.2d 726, 729 (9th Cir. 1984)).

---

[1] While courts in this circuit previously reviewed Title VII exhaustion as implicating courts' subject matter jurisdiction, the Supreme Court has explained that "Title VII's charge-filing requirement is a processing rule, albeit a mandatory one, not a jurisdictional prescription delineating the authority of courts." Fort Bend Cty. v. Davis, 587 U.S. 541, 551 (2019).

The Court now considers the relevant factual matter. Beyond the complaint itself, a court may consider documents attached to the complaint without converting a motion to dismiss into a motion for summary judgment. Outdoor Media Grp., Inc. v. City of Beaumont, 506 F.3d 895, 899-900 (9th Cir. 2007). Here, Mr. Woods has attached his EEOC charge as Exhibit 1 of the Complaint. Exhibit 1 provides the following salient facts. The Charge named only International. The Charge avers discrimination based on race and retaliation beginning on January 1, 2023, and ending on July 20, 2023. The body of the Charge reads, in full:

> "On or about January 4, 2019, I was hired by [International] as an Organizing Coordinator. My last position was Chief of Staff for [Local 4041]. In or around January 2023, my authority was removed as the Chief of Staff and [Local 4041] was placed under an informal administratorship. On or about May 2, 2023, I complained to [International] President, Lee Saunders, regarding the fact that I was told to prove my loyalty via email. On or about June 22, 2023, [Local 4041] was placed on a formal administratorship following a judicial panel hearing that occurred on or about June 15, 2023. On or about June 16, 2023, I emailed Teague Paterson, General Counsel for [International], regarding my discrimination complaint. Subsequently, I was discharged on or about July 20, 0223. I believe I was discriminated against because of my Race (Black), and retaliated against for engaging in protected activity, in violation of Title VII[.]"

Exhibit 2 to the Complaint is the final Determination and Notice of Rights sent by the EEOC to Mr. Woods. While International received a carbon copy, Local 4041 did not.

The Court finds that all three exceptions apply here. First, as a result of the formal Administratorship, International and Local 4041 were "substantially identical parties," with International assuming direct control over certain day-to-day functions. Sosa, 920 F.2d at 1459; see also id. at 1460 ("[T]he trustees govern [defendant entity], the entity Sosa named as respondent in his EEOC charge . . . . [t]herefore, the trustees and [defendant entity] could well be 'substantially identical parties.'"); Kaplan v. Int'l All. of Theatrical & Stage Emp. & Motion Picture Mach. Op'rs, 525 F.2d 1354, 1359 (9th Cir. 1975) (finding the international union subject where only the local was listed in the EEOC charge). Second, the given the intertwined nature of the alleged violations—allegedly culminating in Local 4041 terminating Mr. Woods—EEOC, International, and Local 4041 should have anticipated that Mr. Woods would name Local 4041 in his suit. See Chung, 667 F.2d at 792 ("Both the EEOC and the doctors should have

1 anticipated that Chung would name in his suit those who denied him the promotions mentioned in the charge."). Third, for the same reasons, Local 4041 was "involved in the acts giving rise to the charge." Wrighten v. Metropolitan Hosp., 726 F.2d at 1352.

For the foregoing reasons, the Court finds that Mr. Woods' Title VII claims may proceed.

### ii. Claims III and IV: CRA and But-For Causation

Mr. Woods' third and fourth claims are brought under the CRA. Local 4041 argues that the Complaint fails to support the requisite but-for causation with anything more than conclusory allegations. Mr. Woods asserts that, while he failed to use the "magic words" but for in the pleading, he provided sufficient factual allegations to support but-for causation.

It is well established the CRA, as codified at 42 U.S.C. § 1981 guarantees "all persons" the right to "make and enforce contracts." 42 U.S.C. § 1981(a); see also Gen. Bldg. Cont'rs Ass'n v. Pennsylvania, 458 U.S. 375, 385 (1982) ("The principal object of the [1866] legislation was to eradicate the Black Codes[.]"). This right includes the right to the "enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship," including the relationship between employer and employee. § 1981(b); Johnson v. Riverside Healthcare Sys. LP, 534 F.3d 1116, 1122 (9th Cir. 2008). The "legal principles guiding a court in a Title VII dispute apply with equal force in a § 1981 action." Manatt v. Bank of Am., NA, 339 F.3d 792, 797 (9th Cir. 2003); EEOC v. Inland Marine Indus., 729 F.2d 1229, 1233 n.7 (9th Cir.1984). This includes the requirement that racial animus be the "but-for" cause of the complained of conduct. Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media, 589 U.S. 327, 331-33 (2020).

Because the Parties limit their arguments to but-for causation, the Court reviews only that element here. Under the but-for standard, a plaintiff must plead that "but for the defendant's unlawful conduct, [the] alleged injury would not have occurred." Id. at 331. In the contractual context, the plaintiff must assert that the defendant hindered a contractual relationship based on the plaintiff's race. See id. Here, Mr. Woods avers that, in his role, he was both successful and was never reprimanded. He further alleges that Mr. Sukal promoted various, less qualified, non-Black men to various positions while simulations taking actions to undercut Mr. Woods. The Complaint quotes coworkers as telling Mr. Woods that "you know why this is happening to

- 7 -

you," allegedly suggesting race as the cause, and "the field service director is racist." Taken together, along with inferences, the Court finds that Mr. Woods has pleaded but-for causation.

For the foregoing reasons, the Court finds that Mr. Woods' CRA claims may proceed.

### iii.   Claims V: Rule 9(b) Particularity

The fifth Claim is for false statements in violation of Nevada Revised Statutes 613.010. Local 4010 asserts that this claim sounds in fraud and does not meet the heightened fraud pleading standard. Mr. Woods argues he has provided sufficient particularity.

This is Nevada's "luring" statute. It prohibits inducing, influencing, or engaging out-of-state workers to move to Nevada through false or deceptive representations, advertising, or pretenses concerning (1) the kind and character of work to be done; (2) the amount and character of the compensation; (3) the sanitary or other conditions of their employment; or (4) the existence or nonresistance of labor disputes. Nev. Rev. Stat. § 613.010(1); see also § 613.010(3) (proving a cause of action). Claims, like this one, which sound in fraud are subject to Federal Rule of Civil Procedure 9(b). To meet the particularity requirement of Rule 9(b), the complaint must identify the "who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." Salameh v. Tarsadia Hotel, 726 F.3d 1124, 1133 (9th Cir. 2013) (quoting Cafasso v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1055 (9th Cir. 2011)). Because the Parties center their dispute on sufficiency of Mr. Woods' allegations of a false representation, the Court similarly cabins its analysis. Mr. Woods argues four bases to support false representation and the Court considers each in turn.

First, that Defendants "falsely stated that each were committed to providing" a discrimination free work environment. The Court finds this allegation insufficient. Rule 9(b) does not allow a complaint to "merely lump multiple statements together but requires a plaintiff to differentiate" those allegations. Swartz v. KPMG LLP, 476 F.3d 756, 764-65 (9th Cir. 2007). Further, the person who made these statements, when they were made, and the actual content of them are entirely missing from the pleadings. See Salameh, 726 F.3d at 1133; see also Archuleta v. Corr. Corp. of Am., 735 Fed. Appx. 238 (9th Cir. 2018) (holding that a statement that

"nothing would happen" to the plaintiff was not inducement where an alleged pattern of racial discrimination pre-existed the move).

Second, that International prevented Local 4041 from paying Mr. Woods via the grant funds. There is no allegation in that any representation concerning the grant was made to Mr. Woods or, indeed, that he even knew of the grant, before he moved to Nevada. Further, any such allegation would not support a claim against Local 4041, who did not control the grant.

Third, "Mr. Woods was falsely led to believe he would have the support of [International] as Chief of Staff" while International "intended to undermine him." There are no allegations concerning who made such representations and the content of those representations. Further, again, any such allegations would not support a claim against local 4041.

Finally, Fourth, that "Mr. Woods was not informed about a recent union decertification drive" and that he was "being hired in order to be the person blamed for the decertification." This last allegation lacks any supporting details, particularly considering that Mr. Woods is asserting a false representation by omission.

For the reasons above, the Court finds that Mr. Woods' Nevada luring claim is insufficiently pleaded under Rule 9(b).

### iv.   Claim VI: Applicability to Local 4041

The Court finds that Mr. Woods Nevada Negligent Hiring, Training, Retention, and Supervision is not made against Local 4041. While both Parties provided substantial briefing on the merits of Mr. Woods' sixth claim, the Parties also agree and the plain text of the Complaint confirms, that this claim is only brought against International. Therefore, the Court need not resolve the sufficiency of this pleading.

### v.   Claim VII: Common Interest Privilege

Mr. Woods' seventh claim is for defamation. Local 4041 asserts common interest privilege, while Mr. Woods argues that a factual dispute prevents resolution of privilege now.[2]

Nevada recognizes a common interest privilege which protects publication of a

---

[2] In their Reply, Local 4041 raises for the first time the argument that the statements made by Mr. Serrano were not false. The Court declines to consider this. See Bazuaye v. I.N.S., 79 F.3d 118, 120 (9th Cir. 1996) ("Issues raised for the first time in a reply brief are waived.").

defamatory statement if the defendant made the statement "in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a right or a duty, if it is made to a person with a corresponding interest or duty." Lubin v. Kunin, 17 P.3d 422, 428 (Nev. 2001). Whether the common interest privilege applies is a question of law for the court. Id. If the court determines that the privilege applies, the plaintiff then bears the burden of proving the defendant "abused the privilege by publishing the communication with malice in fact." Circus Circus Hotels v. Witherspoon, 657 P.2d 101, 105 (Nev. 1983). Actual malice means the defendant knew the statement was false or exhibited a reckless disregard for the statement's truth. Nev. Indep. Broad. Corp. v. Allen, 664 P.2d 337, 344 (Nev. 1983). Reckless disregard for the truth means a high degree of awareness of the statement's probable falsity. Id.

The Complaint states that Mr. Serrano was an employee of International and the administrator of Local 4041. Mr. Woods claims Mr. Serrano made several defamatory statements to members of both International and Local 4041, namely that he (1) colluded with the state, (2) breached his fiduciary duty by seeking a formal contract, (3) ordered Local 4041 officials to not discuss matters with International, (4) failed to hold certain meetings, and (5) refused to buy vinegar to clean a coffee pot so as to cause International to pay.

Privilege exists "where a defamatory statement is made in good faith on *any* subject matter in which the person communicating has an interest . . . if it is made to a person with a corresponding interest or duty." Circus Circus Hotels, 657 P.2d at 105 (emphasis added). While Mr. Serrano might have a basis for such privilege, on the information before the Court at this stage, there is no indication that those he made the statement to themselves had any such a privilege. Therefore, the Court declines to resolve common interest privilege at this stage.

For the foregoing reasons, the Court finds the defamation claim may proceed.

### vi. *Claims VIII: Extreme or Outrageous Conduct*

Mr. Woods' eighth claim is for Intentional Infliction of Emotional Distress. Local 4041 argues that the claim lacks any allegations supporting extreme or outrageous conduct. Plaintiff counters that Defendants, "slurred" his "reputation and his good name . . . and have tried to destroy his ability to find work in his chosen field." Under Nevada law, a plaintiff alleging a

claim of intentional infliction of emotional distress must establish that defendants (1) engaged in extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress; (2) that the plaintiff suffered severe or extreme emotional distress; and (3) that actual or proximate causation exists between Defendant's conduct and Plaintiff's injury. Star v. Rabello, 625 P.2d 90 (Nev. 1981). Extreme and outrageous conduct "is that which is outside all possible bounds of decency and is regarded as utterly intolerable in a civilized community," understanding that "persons must necessarily be expected and required to be hardened . . . to occasional acts that are definitely inconsiderate and unkind." Maduike v. Agency Rent-A-Car, 953 P.2d 24, 26 (Nev. 1998) (per curiam) (internal quotations omitted).

The IIED claim against Local 4041 is premised solely on Mr. Serrano (1) allegedly defaming Mr. Woods described above and (2) responding to Mr. Woods' emotional duress by saying "You think it's stress." The Court finds that, even in the light most favorable to Plaintiff, alleged defamation concerning vinegar purchases and minimizing the stresses of others are not "outside all possible bounds of decency" so as to be "utterly intolerable in a civilized community." See Moss, 572 F.3d at 969 (explaining to survive dismissal a complaint needs facts "plausibly suggestive of a claim.").

Therefore, the Court will dismiss Mr. Woods' IIED claim against Local 4041.

  **vii. *Claim IX: Rule 9(b) Particularity***

Plaintiff's final claim is for civil conspiracy between Local 4041 and International. Local 4041 argues that, to the extent the conspiracy is based upon fraud, it fails to satisfy the Rule 9(b) pleading standard.

To bring a successful civil conspiracy claim under Nevada law, a plaintiff must establish that "two or more persons undertake some concerted action with the intent to commit an unlawful objective, not necessarily a tort" and that plaintiff suffered damages as a result. Cadle Co. v. Woods & Erickson, LLP, 345 P.3d 1049, 1052 (Nev. 2015); see also Collins v. United Federal Savings & Loan Ass'n, 662, P.2d 610, 622 (Nev. 1983). The tort of civil conspiracy is about damages stemming from the unlawful agreement, rather than the agreement itself. Eikelberger v. Tolotti, 611 P.2d 1086, 1087 (Nev. 1980).

Mr. Woods' civil conspiracy claim is premised on the following pleadings. Defendants International and Local 4041, "primarily" through Mr. Sukal, Mr. Serrano, and Mr. Allen, engaged in a civil conspiracy to harm against Mr. Woods by "engaging in acts of race discrimination, unlawful retaliation, fraudulent misrepresentation, defamation, sullying Mr Woods['] reputation, damaging [his] ability to secure employment[,] and damaging [his] mental and emotion health[.]" In this list, fraudulent misrepresentation refers to Mr. Woods' fifth cause of action under the Nevada luring statute.

Because the Parties limit their arguments to whether Mr. Woods' fraudulent misrepresentation theory is properly pleaded, the Court does as well.[3] The Court finds that, for the same reasons that Rule 9(b) applies to Mr. Woods' luring statute claim, it applies with equal force to the fraud-based theory of civil conspiracy. See Swatz, 479 F.3d at 765 (""Rule 9(b) imposes heightened pleading requirements where 'the object of the conspiracy is fraudulent.'") (quoting Wasco Products, Inc. v. Southwall Techs, Inc. 435 F.3d 989, 991 (9th Cir.)). Further, for the same reasons, the Court finds the fraudulent misrepresentation theory of civil conspiracy is insufficiently pleaded. Plaintiff argues, without providing authorities, that Rule 9(b) does not apply to conspiracies that involve wrongful acts other than fraud. The Court disagrees. A party cannot hide an insufficiently pleaded fraud claim amid non-fraud claims. See Fed. R. Civ. P. 9(b) (explaining fraud claims "*must* state with particularity") (emphasis supplied). Indeed, to permit such a pleading would run counter to the policy goals of Rule 9(b). See Bly-Magee v. California, 236 F.3d 1014, 1018 (9th Cir. 2001) (explaining the goal of Rule 9(b) is *inter alia* "to give notice to defendants of the specific fraudulent conduct against which they must defend[.]").

For the foregoing reasons, the Court finds that Mr. Woods' civil conspiracy claim fails to satisfy the Rule 9(b) pleading standard and that basis for relief is denied.

### C. International's Joinder

Next, the Court considers the effect of International's joinder to Local 4041's Motion to Dismiss. Federal Rule of Civil Procedure 12(g) permits a party to join a motion to dismiss. In

---

[3] Again, in their reply brief, Local 4041 appears, in passing, to raise new arguments. These are not considered as they are waived. See Bazuaye, 79 F.3d at 120.

their submission, International simply incorporates by reference Local 4041's motion and does not include any additional points or authorities related to International. The Court finds that the Motion to Dismiss limits its challenges to the context of Local 4041 for Claims I, II, VI, VII, and VIII. Therefore, those arguments do not apply to International. Among the remaining claims, only Claims V and VI were dismissed. The Court finds its reasoning above dismissing Claims V and VI applicable to International. Therefore, the Court will dismiss those claims against International as well.

### D. Leave to Amend

Finally, the Court considers Mr. Woods' request for leave to amend any deficiencies identified by the Court. When dismissing a complaint, a court should grant leave to amend if the complaint could possibly be cured by additional factual allegations; however, "[d]ismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment." Salameh v. Tarsadia Hotel, 726 F.3d 1124, 1133 (9th Cir. 2013). The Court will grant leave to file a Motion to Amend regarding his fraud-based claims. However, the Court denied leave to amend Mr. Woods' IIED claim against Local 4041 as futile. See Carrico v. City & Cnty. of San Francisco, 656 F.3d 1002, 1008 (9th Cir. 2011).

### V.  CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that the Motion to Dismiss (ECF No. 11) by Defendant American Federation of State, County, and Municipal Employees, Local 4041, is **GRANTED in part** as follows:

- Claim V for Violation of the Nevada Luring Statute is **DISMISSED without prejudice** regarding both Defendants;
- Claim VIII for Intentional Infliction of Emotional Distress is **DISMISSED with prejudice** regarding Defendant Local 4041; and
- Claim IX for Civil Conspiracy is **DISMISSED without prejudice** regarding both Defendants to the extent that claim is premised upon fraud.

The motion is **DENIED** regarding all other claims.

**IT IS FURTHER ORDERED** that Plaintiff Pearison Woods' Counter Motion to Amend (ECF No. 16) is **DENIED**. Plaintiff may file a Motion to Amend the Complaint on or before October 11, 2024, including a proposed First Amended Complaint. If Mr. Woods seeks to replead the fraud-based theory of his civil conspiracy claim, he must provide that as a separate cause of action from his other theories of civil conspiracy. No additional claims may be added.

**DATED:** September 29, 2024.

---

**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**